CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 15 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAISY M. ST. CLAIR, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 7:06CV00248 | |
| ) | | |
| JO ANNE B. BARNHART, ) | By: | Hon. Michael F. Urbanski |
| COMMISSIONER OF SOCIAL ) | | United States Magistrate Judge |
| SECURITY, ) | | |
|     Defendant. ) | | |

## MEMORANDUM OPINION

Plaintiff Daisy M. St. Clair ("St. Clair") filed this action challenging the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433. Jurisdiction is based upon 42 U.S.C. §§ 405(g). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, see 28 U.S.C. § 636(c)(2), and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the court concludes that the Administrative Law Judge's ("ALJ") disability determination is supported by substantial evidence and must be affirmed.

I.

The court's review of a final decision regarding disability benefits under the Act is limited to a determination of whether there is substantial evidence to support the ALJ's findings. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The court must not undertake a de novo review of the Commissioner's decision, re-weigh the evidence in the administrative record, or make its own independent filings. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Even if the court may have decided the case differently based on the evidence in the record, it

must defer to the Commissioner's decision if it is supported by substantial evidence. Id. Therefore, if substantial evidence exists, the final decision of the Commissioner must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion of a reasonable mind. Richardson, 402 U.S. at 400.

## II.

St. Clair was born in 1955, graduated from high school, and then completed some vocational training as a cosmetologist. (Administrative Record [hereinafter R.] at 93) From 1984 to 1991, St. Clair was employed as a cafeteria worker in a public school. (R. 87) On October 14, 1991, St. Clair slipped on a potato peel and fell while working, injuring her low back, left hip, and left leg. (R. 356) St. Clair's application for DIB benefits stated that her ability to work was limited by hip and leg injuries due to that fall in 1991. (R. 86) The parties agree that the last day on which St. Clair was insured for purposes of DIB was December 31, 1996 and, thus, to be eligible for benefits she must prove she was disabled as of that date. 42 C.F.R. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005). St. Clair's application for DIB benefits, filed on September 3, 2003, was denied by the Commissioner, and an administrative hearing was convened before an ALJ on February 22, 2005. (R. 18, 342-90) In a written decision issued July 27, 2005, the ALJ found St. Clair was not disabled as of December 31, 1996, but instead was able to do a range of work at the light

2

exertional level for which a significant number of jobs existed in the national economy.¹ (R. 24-25) Thus, she was not entitled to disability benefits. (R. 25) The Appeals Council denied St. Clair's request for review, and this appeal followed. (R. 8-11)

While St. Clair may have been disabled from certain forms of employment as of December 31, 1996, the crucial factual determination is whether she was disabled from all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

The issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence. St. Clair makes two principal arguments in support of her disability claim. First, she contends that the ALJ erred in analyzing her physical condition by not properly crediting the opinion of one of her treating physicians, by ignoring her pain, and in concluding

---

¹Light work requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

that she can perform some light work. St. Clair also argues that the ALJ did not appropriately evaluate her claimed non-exertional somatoform disorder.[2]

### III.

As to her physical limitations, St. Clair argues that the ALJ should have determined that she was disabled based on the opinion of one of her treating physicians, Dr. Thomas Brown, an orthopedist. St. Clair states that Social Security Ruling ("SSR") 96-2p requires the Commissioner to accord great weight to a treating source, and she points to several references in Dr. Brown's office notes and letters from 1991 to 1992 suggesting that St. Clair was "unable to work" following her fall. As St. Clair was injured on the job, Dr. Brown sent regular reports to her employer during the months he saw her following her fall. Each of these letters addresses whether St. Clair is able to return to work in the school cafeteria. (R. 113-19, 134, 136-40)[3] Although the ALJ considered Dr. Brown's treatment notes and letters sent to St. Clair's employer in determining her residual functional capacity ("RFC"), the ALJ determined that those records, when considered in conjunction with the remainder of the record, did not support a finding of disability on or before December 31, 1996. (R. 19-22)

Opinions that a claimant is "unable to work" or "remains disabled" are not entitled to controlling weight because such decisions are reserved for the Commissioner. 20 C.F.R. § 404.1527 (e)(1) (stating a medical expert's opinion as to the ultimate conclusion of disability is

---

[2]Somatoform denotes "physical symptoms that can not be attributed to organic disease and appear to be of psychic origin." Dorland's Illustrated Medical Dictionary 1722 (30th Ed. 2003).

[3]Dr. Brown's initial letter to St. Clair's employer, the Giles County School Board, is disjointed in the record. The first page of his letter appears at page 119 and is continued at 134.

4

not dispositive); Morgan v. Barnhart, 142 Fed. Appx. 716, 722 (4th Cir. 2005) (holding that a treating physician's opinion that claimant was "disabled," "unable to work," could not work an eight hour job, and/or could not do her previous work was not entitled to controlling weight). Not only is this issue reserved for the Commissioner, St. Clair exaggerates the import of Dr. Brown's monthly letters to the Giles County School Board. Significantly, Dr. Brown's letters do not state whether St. Clair is disabled from all work. Rather, these letters only address the question as to whether she is able to return to her "normal" or "regular" work in the cafeteria. (R. 113, 136, 137) Dr. Brown stated that "[t]his work involves a great deal of carrying of heavy large pans full of food as well as being in charge of the salad bar," (R. 119), work which he characterized as being "fairly physical." (R. 139) Indeed, Dr. Brown's letter to the school board dated April 29, 1992 stated that St. Clair "checked with her employer and she would have to do regular work as there is no light work available." (R. 136) It clear from these letters that Dr. Brown did not opine that St. Clair was disabled from all work; rather, he was answering the more limited question of whether she could return to her former work in the school cafeteria.

Additionally, the medical evidence does not support a finding of total disability. See 20 CFR § 404.1527(d)(2). During the time period that Dr. Brown treated St. Clair, several clinical tests, including a lumbar spine x-ray and MRI, a CT scan of her pelvis, and an MRI of her left knee were taken, and all but the MRI of St. Clair's lumbar spine were normal. (R. 135, 151, 168) Even this test was relatively unremarkable. The lumbar spine MRI showed two slightly bulging discs, which Dr. Brown termed "just a little mild bulging of the disc at L5-S1 without lateralization but no other significant abnormality." (R. 133-35) Dr. Brown concluded that "[i]n

5

my opinion, this disc bulge is probably an incidental finding and has nothing to do with her ongoing clinical complaints." (R. 134)

Dr. Brown suggested that her back and left hip pain was caused by "musculoligamentous strain of her lower back and . . . traumatic trochanteric bursitis of sorts [developing from] . . .the fall in question."[4] (R. 134) Dr. Brown referred St. Clair to Dr. James Vascik, a Roanoke neurosurgeon, for a consultation on July 9, 1992. (R. 157) After reviewing the same MRI considered by Dr. Brown, Dr. Vascik concluded that "[i]n my opinion it looks normal, except for the normal physiologic disc bulging at multiple levels." (R. 157) Likewise, a bone scan of St. Clair's hips, ordered by Dr. Vascik, was normal. (R. 141) After reviewing St. Clair's MRI and a physical examination, Dr. Vascik advised Dr. Brown that he was "as much in the dark as you are about what is going on with this lady." (R. 158) Dr. Brown also referred St. Clair to Dr. Murray Joiner, a physiatrist, who saw her in September, 1992. (R. 133-34) Dr. Joiner ordered a CT scan of St. Clair's pelvis and an MRI of her left knee, and again the results were normal. (R.168) In short, St. Clair's complaints were not borne out by objective medical testing and imaging studies.

Similarly, other aspects of St. Clair's documented medical history do not support her disability claim. Two days after her fall on October 14, 1991, Dr. Michael McMahon noted the following in his Attending Physician's Report: "Gait looks normal, slightly tender over the left lower back and left mid back. Full ROM of the hip, nothing really significantly tender, thigh nontender, knee full ROM, no effusion. Fall with minor trauma, no strong evidence of fracture." (R. 163) Dr. McMahon suggested that St. Clair be out of work for a week. (R. 163) St. Clair

---

[4]Trochanteric bursitis is inflammation of the bursa surrounding the bony processes just below the neck of the femur. Dorland's Illustrated Medical Dictionary 1953 (30th ed. 2003).

6

was seen by her family doctor, Dr. Devereaux, complaining of left low back and extremity pain in late October and November, 1991, (R. 164-65), and he referred St. Clair to Dr. Brown, in December, 1991.

Dr. Brown's letters suggest that he saw St. Clair on roughly a monthly basis from December 1991 to October 1992. (R. 113-19) Dr. Brown's treatment records document St. Clair's complaints of pain in her lower back and left hip area and note her tenderness in that area. (R. 113-19) At the same time, however, these letters do not suggest St. Clair suffered from a more serious malady. For example, Dr. Brown's January 7, 1992 letter states, "she has no neurologic loss in her legs and straight leg raising is entirely negative." (R. 118) Later that month, he noted St. Clair was slightly tight in her left straight leg raising, but had no motor weakness and normal reflexes. (R. 117) In February 1992, Dr. Brown's examination revealed St. Clair experienced minimal pain in her left leg on straight leg raising to ninety degrees, but again found no motor, sensory, or reflex changes in her legs. (R. 116) In March 1992, while noting tenderness in her left hip, Dr. Brown reported that "[s]he has normal feelings in both legs and feet, has good toe strength, and normal reflexes. Straight leg raising is negative." (R. 114) In April 1992, Dr. Brown noted positive straight leg raising at about eighty degrees in her left leg and a little bit of decreased feeling in her calf and left foot, but normal foot and leg strength and reflexes. (R. 113) Dr. Brown's notes through the fall of 1992 note slight tightness in St. Clair's left straight leg raising, but again no neurologic or strength issues. (R. 136-40) Dr. Brown's

7

letters also reflect his recurrent suggestion of treatment by epidural steroid injection, a course which St. Clair was unwilling to pursue because of her apparent fear of shots.[5] (R. 136-39)

St. Clair's medical records are voluminous, and she was seen by various health care providers on many occasions for a myriad of complaints over the next decade. (R. 171-317) Very few of these records, however, even mention the back and left leg pain upon which St. Clair founds her application for benefits. Following a review of her symptoms by a consulting cardiologist on September 25, 2000, Dr. Jose Rivero's consultation note states "Musculosketal: There are no myalgias or arthralgias."[6] (R. 301) A progress note at the Free Clinic of the New River Valley dated May 8, 2003, noted that she complained of pain in her left hip and leg due to a fall in 1992. (R. 282) A subsequent x-ray of the hip joint showed the hip was symmetrical to the right hip, some faint calcifications on the greater trochanter consistent with calcific bursitis was present on both hips, and there were no "suspicious bony lesion[s]." (R. 308) Physical therapy was ordered, and the therapist's note dated May 20, 2003, stated that her left hip bursitis had "improved to a small degree" with stretching and other modalities for inflammation control, but noted St. Clair's poor level of fitness and utter lack of exercise contribute to her discomfort.

---

[5]The court notes that although there may be some further basis for a finding that St. Clair is not disabled from pain based on her refusal to follow her treating physician's treatment recommendation, because the ALJ did not fully explore the basis for her refusal of treatment on the record, the court will not address this issue further. See 20 C.F.R. §§ 404.1530(b), 416.930(b) (stating if a claimant does not follow the prescribed treatment without a good reason, the Commissioner will not find disability); SSR 82-59 (holding that before a claimant can be denied benefits based on his noncompliance with prescribed medical treatment, he must be given a full opportunity to express the specific reasons for his decision not to follow the prescribed treatment).

[6]Myalgia is muscle pain, and arthralgia is joint pain. Dorland's Illustrated Medical Dictionary 1205, 149 (30th Ed. 2003).

8

unrelated complaint, Dr. Noble summarized her musculosketal system as follows: "Complains of joint pain, back pain and stiffness. Denies arthritis, gout, joint deformity or muscle weakness." (R. 291) In short, St. Clair's claimed disability due to back and left leg pain is undermined by the relatively few times she sought treatment for this malady over the years.

Dr. Brown's letters and treatment notes do not indicate that St. Clair was disabled from all substantial gainful activity due to back and leg pain stemming from her fall in 1991. Further, a careful review of St. Clair's medical history demonstrates that despite seeing many doctors and complaining of a wide variety of ailments, she rarely mentioned her alleged leg and back pain. Accordingly, considering the context of Dr. Brown's letters written to St. Clair's employer and St. Clair's vast medical record, it would have been an unwarranted leap for the ALJ to conclude that Dr. Brown's letters and notes indicate St. Clair was disabled from all forms of work. As such, the undersigned finds the ALJ afforded appropriate consideration to Dr. Brown's letters and opinions.

## IV.

St. Clair next argues that the ALJ erred in finding her complaints of disabling pain were not totally credible and that she retained the capacity to do some light exertional work. St. Clair testified that her body was sore all the time and that some days she has difficulty even getting out of bed, thus, precluding her from all forms of work. (R. 360-67) The ALJ found that although St. Clair suffers from some pain causing functional limitations, her complaints of disabling pain were not fully persuasive based on her medical record, testimony from a medical expert, and evidence in the record suggesting her alleged pain had minimal impact on her normal daily

9

activities and, thus, determined that she retained the ability to do a limited range of light work. (R. 22-25)

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept St. Clair's subjective allegation that she is disabled by pain, but rather must determine, through an examination of the objective medical record, whether she has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether St. Clair's statements about her symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

Despite her complaints of pain, St. Clair's physicians have repeatedly noted she has a full range of motion, no motor, sensory, or reflex loss, and none have advised her to stop all physical exertion. Additionally, St. Clair's reported daily activities do not suggest her pain is wholly disabling. On her disability application, St. Clair reported that she had no difficulty taking care of her personal needs, (R. 106), and she advised the therapist conducting the psychological review in April 2005 that she prepares her family's meals, does daily household chores, including making the beds, washing dishes, and laundry, and she makes at least two trips outside her home each week to shop and attend church. (R. 327)

10

Moreover, in addition to considering the record and St. Clair's testimony in making his RFC determination, the ALJ took the additional step of having a medical expert, Dr. H. C. Alexander, at the administrative hearing.[7] Dr. Alexander considered St. Clair's medical history, was present for her testimony, and questioned her regarding mental health treatment. (R. 368-79) Based on this information, Dr. Alexander found that despite her complaints of pain, St. Clair retained the RFC to lift twenty pounds occasionally, ten pounds frequently, sit for at least six hours in an eight hour work day, stand and/or walk for about four hours in a work day, and would need only normal amounts of breaks. (R. 372) Additionally, Dr. Alexander opined that St. Clair would have postural limitations precluding use of ropes, ladders, and/or scaffolding and environmental limitations of no hazards. (R. 372)

Considering the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, based on a complete review of St. Clair's medical history, her activities of daily living as well as the evidence from Dr. Alexander, the court finds there is substantial evidence to support the ALJ's determination that St. Clair retains the physical capacity for a limited range of light exertional work. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding of no disability where plaintiff testified that she suffers from severe pain and hand problems

---

[7]SSR 96-2p provides that the ALJ "may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record."

11

where plaintiff was able to attend Church twice a week, read books, watch television, clean the house, wash clothes, visit relatives, feed pets, manage household finances, and perform exercises recommended by her chiropractor); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where plaintiff was able to cook, shop, wash dishes, and walk to town every day).

## V.

Next, St. Clair contends that the ALJ's conclusion that she could only stand and/or walk for four hours is inconsistent with the physical requirements for the full range of light work. While St. Clair correctly notes that SSR 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," the ALJ did not find that St. Clair could do the full range of light work. Instead, the ALJ determined that St. Clair could only do light work which required walking for about four hours a day. (R. 24) Accordingly, on its face, this argument is without merit.[8]

Further, the hypothetical posed to the vocational expert properly included all impairments the ALJ found credible and specified that the individual could not stand more than four hours, consistent with his RFC determination and the testimony of the medical expert. (R. 381) Thus, the ALJ's reliance on the vocational expert's testimony in finding employment exists in the national economy for a person with St. Clair's functional limitations is appropriate. Walker v.

---

[8]St. Clair's reference to SSR 83-14 is likewise unavailing. That ruling explains that "[t]he major difference between sedentary and light work is that most light jobs – particularly at the unskilled level of complexity - require a person to be standing or walking most of the workday." SSR 83-14. Again, St. Clair's argument ignores the fact that the ALJ limited his RFC determination to light work which required no more than four hours of walking and/or standing in an eight hour day. (R. 24)

12

Bowen, 889 F.2d 47, 50 (4th Cir. 1989), English v. Shalala, 10 F.3d 1080, 1085-86 (4th Cir. 1993). Accordingly, the court finds that there is substantial evidence to support the ALJ's finding that jobs exists in significant numbers in the national economy for an individual with St. Clair's physical limitations.

## VI.

Finally, St. Clair argues that she is disabled due to a somatoform disorder, which is suggested by the fact that she has made a myriad of medical complaints for which there is little objective diagnostic or clinical basis. To be sure, St. Clair's medical history is replete with a wide variety of claimed ailments. The vast majority of these complaints, however, post date December 31, 1996, her date last insured. Although her medical records reflect that she complained of intermittent heart palpitations and anxiety on a couple of occasions while she was still working, most of her complaints come after her date last insured.

The somatoform issue appears to have been raised for the first time in late 2004, nearly eight years after St. Clair's date last insured, when counsel for St. Clair wrote Dr. Walker, one of St. Clair's primary care physicians, questioning whether "she might have a somatoform disorder or an anxiety disorder contributing to the complaints she has experienced." (R. 312) Dr. Walker responded to counsel that "[t]here is significant evidence in the chart to support your viewpoint." (R. 312) Dr. Walker's letter proceeded to assess certain entries in St. Clair's medical history prior to December 31, 1996, and he concluded that "I think that this patient has suffered from chronic anxiety and depression and that the diagnosis of significant somatoform disorder is substantiated. The patient's 'doctor shopping' has unfortunately exacerbated the problem." (R. 312)

13

Despite this 2004 assessment, St. Clair was not referred for mental health counseling or treatment prior to that time, nor does the record reflect that she received any such treatment at any time prior to the administrative hearing in February 2005. When this issue was raised at the administrative hearing, the ALJ ordered a psychological examination. St. Clair was examined by Tonya McFadden, M.A., Licensed Psychologist, on April 4, 2005, and she prepared a written psychology report. (R. 326-31) In this report, McFadden indicated St Clair has generalized anxiety disorder, but the report does not support a finding of disability in 2005, much less 1996. (R. 329-31) McFadden diagnosed St. Clair with generalized anxiety disorder, but found that she had a Global Assessment Function ("GAF") of 60.[9] Although the report notes that the "profile analysis revealed an individual who may meet the criteria for a diagnosis of somatoform disorder, anxiety disorder or depressive disorder," St. Clair's prognosis was deemed to be "[f]air with appropriate treatment." (R. 330)[10] Summarizing her functional information, McFadden wrote:

> This is an individual who presents with symptoms consistent with generalized anxiety disorder. She does appear able to execute

---

[9]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders Fourth Edition 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id. A GAF of 61-70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

[10]Simply because in 2005 St. Clair "may" meet the criteria for the diagnosis for somatoform disorder does not mean that she was, some eight years earlier, disabled from all work by this condition. While St. Clair's medical records contain one reference to "multiple multiple somatic complaints" in 1979, (R. 324), and occasional references to anxiety and depression prior to 1996, there is no reference to any treatment by a psychologist or psychiatrist. Given St. Clair's lengthy and involved medical history, the absence of any such treatment is telling.

14

> simple and repetitive tasks as well as some detailed and complex
> task. There is likely to be minimal disruptions in her ability to
> perform work-related tasks on a sustained basis based upon her
> psychological presentation. She is likely to be able to accept
> instructions from supervisors. Anxiety may affect her ability to
> interact somewhat with co-workers and with the public. Further,
> anxiety is likely to impair her ability to deal with stressors
> encountered in competitive work.

(R. 330-31) Noting that this examination did not support a finding of a disabling somatoform disorder as of April 2005, and that there was no clear indication of the existence of such a disorder prior to December 31, 1996, the ALJ found St. Clair's non-exertional complaints were not fully persuasive and accorded them little weight. The ALJ also noted that despite her claimed anxiety and depression, St. Clair was able to work in the cafeteria prior to her fall in 1991. While Dr. Walker's 2004 letter points out a few instances early in her medical history noting anxiety or depression and one suggesting a somatic component to her various complaints, all of these instances predate her fall and the onset of her claimed disability. The record suggests, therefore, that despite these issues, St. Clair was able to work prior to her 1991 fall. There is no medical opinion stating that St. Clair was disabled by a somatic disorder prior to December 31, 1996, nor is there any suggestion in the record that St. Clair was diagnosed or treated for this condition. St. Clair bears the burden of demonstrating disability prior to December 31, 1996, and the ALJ's decision that she did not carry her burden is well supported in the record. See 20 C.F.R. § 404.1512.

Finally, St. Clair argues that the issue of her mental impairment needs to be considered by a Ph.D. psychologist or psychiatrist, with access to all of her medical records, rather than just the consultative exam by McFadden. The regulations do not provide that a mental consultative exam

15

must be completed by a Ph.D. psychologist or psychiatrist. 20 C.F.R. § 404.17. Rather, the regulations provide only that the exam must be completed by a qualified individual, and McFadden, as a Licensed Psychologist, meets these requirements. 20 C.F.R. § 404.1519g (stating that a consultative exam shall be conducted by a qualified individual licensed in the State with the training and experience to conduct the requested exam); 20 C.F.R. § 404.1513(a)(2) (stating that a licensed psychologist may provide evidence to establish an impairment).

The ALJ sought the advice of both a medical expert at the hearing and granted plaintiff's motion for a consultative psychological exam. Neither the medical expert nor the consultative exam report indicate that St. Clair was disabled as of December 31, 1996. There was no need for the ALJ to have done more. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). St. Clair simply has not met her burden of proving disability as of December 31, 1996, and there is substantial evidence to support the ALJ's decision that she was not disabled as of that date.

## VII.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to have resulted in total disability for all forms of substantial gainful employment as of December 31, 1996. It appears that the ALJ properly considered all of the subjective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

16

For the reasons stated above, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

Enter this 15th day of February, 2007.

_____
Michael F. Urbanski
United States Magistrate Judge